**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
MALIK LUCAS,                                          :

                          *Plaintiff,*                 :

                                              :

—*v.*—                                               :        **COMPLAINT AND JURY**
                                              :        **DEMAND**
                                              :

THE CITY OF NEW YORK,                                 :        Docket No. _____
NEW YORK CITY POLICE DEPARTMENT, and :
NYPD OFFICERS JOHN/JANE DOES #1–10,                  :
                         *Defendant(s)*            :
------------------------------------------------------------------X

       **PLAINTIFF MALIK LUCAS,** by and through his attorneys, REHAN NAZRALI,

ESQ., complaining of the Defendant(s) herein, states and alleges, upon information and belief, as

follows:

## PRELIMINARY STATEMENT

       **1.**    This action seeks to vindicate the rights of MALIK LUCAS (hereinafter

"PLAINTIFF"), who was wrongfully arrested and imprisoned, as well as subjected to other

violations of his Fourth and Fourteenth Amendment rights under the United States Constitution

("Constitution").

       **2.**    These Constitutional violations were committed by the CITY OF NEW YORK,

NEW YORK CITY POLICE DEPARTMENT, AND NYPD POLICE OFFICERS JOHN/JANE

DOES #1–10 (together as "DEFENDANTS"), all of which are named as Defendants in this

action.

       **3.**    On February 4, 2023, the PLAINTIFF was unjustifiably seized, brutalized, and

arrested without being read his Miranda rights or being told what he was being arrested for.

**4.**     He was subsequently released that same day with zero charges being filed against him.

**5.**     DEFENDANT CITY OF NEW YORK ("CITY") is liable for the violations of the PLAINTIFF's Constitutional rights, as PLAINTIFF's injuries were caused by the policies, practices and/or customs of the DEFENDANT NEW YORK CITY POLICE DEPARTMENT ("NYPD"), an agency of the CITY.

**6.**     The allegations stated herein represent an all–too–familiar story of abusive, incompetent, and overzealous policing that resulted in the needless deprivation of PLAINTIFF's Constitutional rights.

## JURISDICTION AND VENUE

**7.**     This action is brought under 42 United States Code ("USC") §1983, §1988, and the Fourth and Fourteenth Amendments of the Constitution.

**8.**     Jurisdiction is conferred upon this Court by 28 USC §§1331, 1343, and 1367.

**9.**     This Court also has supplemental jurisdiction over the State claims and over Defendants pursuant to 28 U.S.C. §1367.

**10.**     Venue is proper under 28 USC §§1391(a), (b), and (c), as the entirety of the events which give rise to the claims in this action occurred within the Eastern District of New York, in addition to one or more defendants being subject to personal jurisdiction in this district.

## PARTIES

11.     The PLAINTIFF is an individual who, at the time of the incident, resided in Brooklyn, New York.

12.     DEFENDANT The City Of New York ("CITY") is a municipal corporation created and existing under the laws of the State of New York and is authorized to maintain a police department known as the New York City Police Department ("NYPD"), which acts as its agent and for which it is responsible.

13.     DEFENDANTS JOHN/JANE DOES #1–10 ("POLICE OFFICERS") whose identities are currently unknown to PLAINTIFF, are the NYPD Police Officers who participated in the unlawful arrest and/or failed to intervene to prevent the unlawful arrest, among other constitutional violations, and the harm caused by those actions.

## FACTUAL ALLEGATIONS PERTINENT TO ALL COUNTS

14.     PLAINTIFF is a 24–year old African American male.

15.     On February 4, 2023, at or about 2:00 pm PLAINTIFF, his friends Sean and Rich, last names unknown to PLAINTIFF, left Sean's residence in order to go to Genesis Deli and Grocery ("store"), which is located at 121 Riverdale Ave, Brooklyn, NY 11212, at the corner of Riverdale Avenue and Amboy Street.

16.     PLAINTIFF, while accompanied by Rich, entered the store to make a purchase.

17.     Sean waited in his vehicle, which was parked adjacent to the store on Amboy Street.

18.     After making their purchases and exiting the store, the PLAINTIFF and Rich made their way to the vehicle where Sean was waiting.

19.     They entered the vehicle and were ready to depart, with no more than thirty (30) seconds spanning between the time they entered the vehicle and the time at which they were ambushed by the police.

20.     The DEFENDANT POLICE OFFICERS, deployed from the 73rd Precinct, suddenly pulled up and approached the vehicle the PLAINTIFF and his friends were in.

21.     The DEFENDANT POLICE OFFICERS, some in plain clothes and some in uniform, drove their patrol vehicle and unmarked vehicles onto the sidewalk.

22.     The DEFENDANT POLICE OFFICERS subsequently exited their vehicles with guns drawn.

23.     The PLAINTIFF and his friends were ordered by the POLICE OFFICERS to exit the vehicle.

24.     Upon exiting the vehicle, one of the POLICE OFFICERS, described as a black male with dreads, rushed the PLAINTIFF and aggressively threw him onto the ground with both hands, causing the PLAINTIFF's face to strike the concrete.

25.     PLAINTIFF, who has a metal rod in his leg, complained to a POLICE OFFICER, described as being tall and having salt and pepper hair, who then assisted the PLAINTIFF up from the ground.

26.     PLAINTIFF was then searched for contraband, but none was found.

27.     The PLAINTIFF's friends were also searched, but no contraband was found.

28.     The vehicle the PLAINTIFF was in was also searched, but no contraband was

found.

**29.** PLAINTIFF was not read his Miranda rights nor told the reason why he was being handcuffed, arrested, placed into a patrol vehicle, and transported to the 73rd Precinct.

**30.** PLAINTIFF was detained in a holding cell inside the 73rd Precinct for approximately ten (10) hours.

**31.** On February 5, 2023, PLAINTIFF was released from the 73rd Precinct at approximately 2:00 AM without any charges ever being filed against him or any of his friends.

**32.** The aforementioned DEFENDANT POLICE OFFICERS were aware of the fact that the PLAINTIFF had not committed any crime.

**33.** Despite this knowledge, the DEFENDANT POLICE OFFICERS still unjustifiably arrested and detained the PLAINTIFF.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (ABUSE OF PROCESS UNDER 42 USC §1983 AGAINST ALL DEFENDANTS)

**34.** The PLAINTIFF repeats each and every preceding paragraph as if fully pleaded and re-alleged in their entirety below.

**35.** The Fourth, Fourteenth, and Fifth Amendments of the Constitution protect all individuals from unreasonable searches and seizures, as well as wrongful and false charges.

**36.** Despite lacking probable cause to seize the PLAINTIFF, the DEFENDANT POLICE OFFICERS nonetheless did so.

37.     The above described actions of the DEFENDANTS, more specifically the DEFENDANT POLICE OFFICERS, constitute abuse of process due to their intentional, willful, and malicious fabrication of probable cause used to justify the unreasonable seizure of the PLAINTIFF.

38.     At all relevant times, the DEFENDANT POLICE OFFICERS were employed by DEFENDANTS CITY and NYPD.

39.     The DEFENDANT POLICE OFFICERS were acting within the purpose and scope of such agency and employment, rendering the CITY and NYPD liable for the wrongful conduct of their officers, agents, servants, and/or employees.

40.     The aforementioned actions of the DEFENDANT POLICE OFFICERS were committed under color of CITY/STATE law and deprived the PLAINTIFF of rights, privileges, or immunities guaranteed by the United States Constitution.

41.     PLAINTIFF was injured, rendered sick, sore, lame, and disabled, and was, or will be cause, to undergo medical treatment and advice, and has been unable to pursue his usual and regular activities due to the permanent nature of his injuries.

42.     As a result of the defendant CITY, NYPD's conduct as stated above, as well as the actions of the DEFENDANT POLICE OFFICERS caused PLAINTIFF to suffer loss of liberty, severe shock to his nervous systems, emotional distress, and psychological emotional injuries.

**SECOND CAUSE OF ACTION**
**(FALSE ARREST AND FALSE IMPRISONMENT UNDER 42 USC §1983 AGAINST ALL DEFENDANTS)**

43.     The PLAINTIFF repeats and re–alleges each and every preceding paragraph as if fully pleaded and re-alleged in their entirety below.

44.     The Fourth and Fourteenth of the Constitution protect all individuals from unreasonable searches and seizures, as well as false arrest and false imprisonment.

45.     Despite lacking probable cause to arrest and imprison the PLAINTIFF, the DEFENDANT POLICE OFFICERS nonetheless did so.

46.     The above described actions of the DEFENDANTS, more specifically the DEFENDANT POLICE OFFICERS, constitute false arrest and false imprisonment due to their intentional, willful, and malicious fabrication of a probable cause used to justify the unreasonable arrest of the PLAINTIFF.

47.     The DEFENDANT POLICE OFFICERS were employed by DEFENDANTS CITY and NYPD.

48.     The DEFENDANT POLICE OFFICERS were acting within the purpose and scope of such employment, rendering DEFENDANTS CITY and NYPD liable for the wrongful conduct of their officers, agents, servants, and/or employees.

49.     The aforementioned actions of the DEFENDANT POLICE OFFICERS were committed under color of state law and deprived the PLAINTIFF of rights, privileges, or immunities guaranteed by the Constitution.

50.     PLAINTIFF was injured, rendered sick, sore, lame, and disabled, and was, or will be cause, to undergo medical treatment and advice, and has been unable to pursue his usual and regular activities due to the permanent nature of his injuries.

51.     As a result of the above stated conduct, the actions of the DEFENDANT POLICE OFFICERS and **DEFENDANTS CITY** and **NYPD** caused PLAINTIFF to suffer loss of liberty, severe shock to his nervous systems, emotional distress, and psychological emotional injuries.

### THIRD CAUSE OF ACTION
### (FAILURE TO INTERVENE UNDER 42 USC §1983 AGAINST DEFENDANT POLICE OFFICERS)

52.     The PLAINTIFF repeats each and every preceding paragraph as if fully pleaded and re-alleged in their entirety below.

53.     The Fourth and Fourteenth Amendments of the Constitution protect all individuals from unreasonable searches and seizures, as well as false arrest and false imprisonment.

54.     The DEFENDANT POLICE OFFICERS had an affirmative duty to intervene on behalf of PLAINTIFF, whose Constitutional rights were being violated in their presence by other police officers.

55.     The DEFENDANT POLICE OFFICERS failed to intervene and prevent the unlawful conduct described herein.

56.     The DEFENDANT POLICE OFFICERS who were present while PLAINTIFF was wrongfully injured, arrested, and imprisoned failed to intervene to prevent other police officers from subverting the Constitutional rights of the PLAINTIFF are liable under USC §1983 as those officers had reason to know a) that false imprisonment and false arrest were being made in their presence and b) that Constitutional violations had been committed by other police officers.

57.    The DEFENDANT POLICE OFFICERS had a realistic opportunity to intervene and prevent the harm and Constitutional violations from occurring.

58.    The aforementioned actions of the DEFENDANT POLICE OFFICERS were committed under color of CITY/STATE law and deprived the PLAINTIFF of rights, privileges, or immunities guaranteed by the Constitution.

59.    The DEFENDANT POLICE OFFICERS were employed by Defendants CITY and NYPD.

60.    The DEFENDANT POLICE OFFICERS were acting within the purpose and scope of such agency and employment, rendering Defendants CITY and NYPD liable for the wrongful conduct of their officers, agents, servants, and/or employees.

61.    The aforementioned actions of the DEFENDANT POLICE OFFICERS were committed under color of CITY law and deprived the PLAINTIFF of rights, privileges, or immunities guaranteed by the Constitution.

62.    PLAINTIFF was injured, rendered sick, sore, lame, and disabled, and was, or will be cause, to undergo medical treatment and advice, and has been unable to pursue his usual and regular activities due to the permanent nature of his injuries.

63.    As a result of the above stated conduct, the actions of the DEFENDANT POLICE OFFICERS caused PLAINTIFF to suffer loss of liberty, severe shock to his nervous systems, emotional distress, and psychological emotional injuries.

**<u>FOURTH CAUSE OF ACTION</u>**
**<u>(EXCESSIVE FORCE UNDER 42 USC §1983 AGAINST ALL DEFENDANTS)</u>**

64.     The PLAINTIFF repeats each and every preceding paragraph as if fully pleaded and re-alleged in their entirety below.

65.     The Fourth and Fourteenth Amendments of the Constitution protect all individuals from unreasonable searches and seizures, as well as prohibiting law enforcement from using excessive force.

66.     The above described actions by the DEFENDANT POLICE OFFICERS that took place on February 4, 2023 constitute unreasonable and excessive force in violation of the PLAINTIFF'S Fourth and Fourteenth Amendment rights.

67.     The DEFENDANT POLICE OFFICERS who were present while PLAINTIFF was wrongfully injured, arrested, and imprisoned lacked probable cause to a) believe that the PLAINTIFF had committed a crime, b) to believe that the PLAINTIFF was about to commit a crime, and c) to use excessive force against the PLAINTIFF.

68.     The aforementioned actions of the DEFENDANT POLICE OFFICERS were committed under color of CITY/STATE law and deprived the PLAINTIFF of rights, privileges, or immunities guaranteed by the Constitution.

69.     This conduct was carried out by the DEFENDANT POLICE OFFICERS, who were agents, servants, and/or employees of DEFENDANT CITY and DEFENDANT NYPD.

70.     The DEFENDANT POLICE OFFICERS were acting within the purpose and scope of such agency and employment, rendering the CITY and NYPD liable for the wrongful conduct of their officers, agents, servants, and/or employees.

71.    The aforementioned actions of the DEFENDANT POLICE OFFICERS were committed under color of CITY/STATE law and deprived the PLAINTIFF of rights, privileges, or immunities guaranteed by the Constitution.

72.    PLAINTIFF was injured, rendered sick, sore, lame, and disabled, and was, or will be cause, to undergo medical treatment and advice, and has been unable to pursue his usual and regular activities due to the permanent nature of his injuries.

73.    As a result of the above stated conduct, the actions of the DEFENDANT POLICE OFFICERS caused PLAINTIFF to suffer loss of liberty, severe shock to his nervous systems, emotional distress, and psychological emotional injuries.

### FIFTH CAUSE OF ACTION
### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER 42 USC §1983 AGAINST ALL DEFENDANTS)

74.    The PLAINTIFF repeats each and every preceding paragraph as if fully pleaded and re-alleged in their entirety below.

75.    DEFENDANTS CITY and NYPD, by and through the actions of their employees, agents or subagents, specifically DEFENDANT POLICE OFFICERS, negligently arrested PLAINTIFF.

76.    The aforementioned acts, damages, and injuries sustained by the PLAINTIFF were caused by the negligence and incompetence of DEFENDANTS CITY and NYPD, who did not exercise due care in the hiring, training, and supervision of the individual POLICE OFFICERS and by failing to properly investigate the existing circumstances before effectuation the PLAINTIFF's arrest.

77.     That the aforementioned individual subject defendants POLICE OFFICERS JOHN DOES #1 – 7's actions were committed under color of CITY/STATE law and that these acts deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

78.     At all relevant times hereto, PLAINTIFF is informed, believes and thereon alleges that the aforementioned defendant POLICE OFFICERS as agents, servants and employees of each of DEFENDANT CITY and NYPD were at all times herein acting within the purpose and scope of such agency and employment and, as such, DEFENDANT CITY and NYPD are vicariously liable for such officers, agents, servants and employees wrongful conduct thereto.

79.     DEFENDANT CITY and NYPD's conduct was intentional and outrageous as it pertains to the oversight, knowledge, and/or acquiescence of the racial discrimination of PLAINTIFF at the hands of defendant JOHN DOES # 1 – 7.

80.     That DEFENDANT CITY and NYPD knew, or should have known, that the foregoing negligent, reckless, extreme, and outrageous conduct by defendants POLICE OFFICERS JOHN DOES # 1 – 7 would inflict severe emotional and psychological distress, including personal physical injury, on others and PLAINTIFF did, in fact, suffer severe emotional and psychological distress and personal physical injury as a result, including severe mental anguish, humiliation, and physical distress.

81.     The aforementioned actions of the DEFENDANT POLICE OFFICERS were committed under color of CITY/STATE law and deprived the PLAINTIFF of rights, privileges, or immunities guaranteed by the Constitution.

82. PLAINTIFF was injured, rendered sick, sore, lame, and disabled, and was, or will be cause, to undergo medical treatment and advice, and has been unable to pursue his usual and regular activities due to the permanent nature of his injuries.

83. As a result of the DEFENDANT CITY and NYPD's conduct, as stated above, the actions of the DEFENDANT POLICE OFFICERS caused PLAINTIFF to suffer physical injuries, loss of liberty, severe shock to his nervous systems, emotional distress, and psychological emotional injuries.

**SIXTH CAUSE OF ACTION**
**(MONELL VIOLATIONS UNDER 42 USC §1983 AGAINST CITY)**

84. The PLAINTIFF repeats each and every preceding paragraph as if fully pleaded and re-alleged in their entirety below.

85. The violation of PLAINTIFF's constitutional rights and resultant injuries were directly, proximately, and substantially caused by conduct, chargeable to DEFENDANT CITY and NYPD, amounting to deliberate indifference to the Constitutional rights of persons, including PLAINTIFF, who are investigated, arrested and/or prosecuted for alleged crimes, and the deliberate indifference by policymaking officials at the NYPD with respect to their obligation to properly instruct, train, supervise and discipline their employees, including the individual DEFENDANTS in this case.

86. DEFENDANT CITY and NYPD failed to take the steps necessary to properly train, supervise, and/or instruct its officers including, but not limited to, the DEFENDANT POLICE OFFICERS, in the proper manner of making arrests; in the proper and strict adherence to their anti-racist, moral and professional obligations; and in intervening when an improper arrest and false imprisonment is occurring in their presence.

87. DEFENDANTS CITY and NYPD knew, or should have known, that the DEFENDANT POLICE OFFICERS would encounter situations in which they would have to make arrests of persons of color without proper cause.

88. DEFENDANTS CITY and NYPD knew, or should have known, that such issues present NYPD employees with difficult choices — choices that instruction, training and supervision would make less difficult.

89. DEFENDANTS CITY and NYPD knew, or should have known, that the need for further instruction, training, supervision and discipline was demonstrated by a history of police employees, such as DEFENDANT NYPD OFFICERS JOHN/JANE DOES #1–10, mishandling such situations, as well as incentives that police employees are given in order to make the wrong choice.

90. DEFENDANTS CITY and NYPD knew, or should have known, that the wrong choices made by such employees in those positions, concerning such issues, would frequently cause the deprivation of the Constitutional rights of individuals, such as PLAINTIFF, and cause Constitutional injury.

91. The policies implemented by the CITY, followed by its law enforcement officers, have been reported in the media as possessing structural and racial inadequacies, specifically the manner in which such enforcement officers are trained and managed regarding the prosecution and arrest of persons of color.

92. The existence of the above-described *de facto* unlawful policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and/or policy-making officers, employees/representatives and/or agents, and

DEFENDANTS CITY and NYPD, including, but not limited to, NYPD and the DEFENDANT POLICE OFFICERS.

93. At the time of the aforementioned Constitutional violations, DEFENDANTS CITY and NYPD were, and had been, on notice of such unconstitutional conduct, customs, and *de facto* policies, such that the failure of the DEFENDANTS CITY and NYPD to take appropriate remedial action amounted to deliberate indifference.

94. Despite knowledge of such unlawful *de facto* policies, practices, and/or customs, these supervisory and policy-making officers and officials of the DEFENDANTS CITY and NYPD have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such policies, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority and have made no meaningful attempt to prevent future Constitutional violations.

95. DEFENDANTS CITY and NYPD instead approve and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to, and/or reckless disregard of the effects of said policies, practices and/or customs in regard to the constitutional rights of persons in the City of New York.

96. The existence of these unconstitutional customs and practices, specifically regarding the failure to supervise, train, instruct, and discipline law enforcement officers, encouraging their misconduct, and exhibiting deliberate indifference towards the constitutional rights of persons with whom officers come into contact, are further evidenced, *inter alia*, by the following:

a. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in <u>Colon v. City of New York</u>, 09–CV–00008 (E.D.N.Y.) in which he noticed a *"widespread... custom or policy by the city approving illegal conduct"* such as lying under oath and false swearing, NYPD Commissioner Raymond Kelly acknowledged, *"When it happens, it's not for personal gain. It's more for convenience."*

b. <u>McMillan v. City of New York</u>, 04–CV–3990 (FB)(RML) (E.D.N.Y.) in which officers fabricated evidence against an African-American man in Kings County and initiated drug charges against him, despite an absence of an quantum of suspicion;

c. <u>Richardson v. City of New York</u>, 02–CV–3651 (JG)(CLP) (E.D.N.Y.) in which officers fabricated evidence, including knowingly false sworn complaints, against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion;

d. The Mollen Commission concluded that police perjury and falsification of official records is probably the most common form of police corruption facing the criminal justice system, stating, *"Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their superiors. Corrupt and honest officers told us that their supervisors knew or should have known about falsified versions of searches and arrests and never questioned them. (...) What breeds this tolerance is deep-rooted perception among many officers of all ranks within the Department that there is nothing really wrong with compromising the facts to fight crime in the real world. Simply put, despite devastating consequences of police falsifications, there is a persistent belief among officers that it is necessary and justified, even if it is unlawful. As one dedicated officer put it, police officers often view falsification as, to use his words, "doing God's work" - doing whatever it takes to get the suspected criminal off the streets. This is so entrenched, especially in high-crime precincts, that when*

> *investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, "What's wrong with that? They're guilty."*

97.     The existence of the aforesaid unconstitutional customs and policies, specifically with regard to "productivity goals," may be further inferred from the following: Former Deputy Commissioner Paul J. Browne has repeatedly admitted that NYPD commanders are permitted to set "productivity goals."

98.     DEFENDANTS CITY and NYPD are directly liable and responsible for the acts of DEFENDANT POLICE OFFICERS, as it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the CITY and NYPD and failed to require compliance with the Constitution and laws of the United States.

99.     Despite knowledge of such unlawful *de facto* policies, practices, and/or customs, these supervisory and policy-making officers and officials of DEFENDANTS CITY and NYPD have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such policies, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority.

100.     Instead, DEFENDANTS CITY and NYPD approved and ratified these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effects of said policies, practices and/or customs or the constitutional rights of persons in the City of New York including PLAINTIFF.

101.    The aforementioned DEFENDANTS CITY and NYPD policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein.

102.    PLAINTIFF's injuries were a direct and proximate result of the DEFENDANTS CITY and NYPD wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of DEFENDANTS CITY and NYPD to properly supervise, train and discipline their agents, employees, or representatives.

103.    Here, it is clear that DEFENDANTS CITY and NYPD took action by their hiring and retention, which is sufficient to expose them to liability pursuant to <u>Amnesty America v. Town of West Hartford</u>, 361 F3d 113,125 (2d Cir. 2004).

104.    Upon information and belief, DEFENDANTS CITY and NYPD were on notice that these policies were being unconstitutionally applied and, by implication, have demonstrated the constructive acquiescence of senior policymaking officials.

105.    Under the principles of municipal liability for federal civil rights violations, New York City's Police Commissioner (or his authorized delegates) has final responsibility for training, instructing, supervising and disciplining employees in his office regarding their conduct.

106.    Under the principles of municipal liability for federal civil rights violations, New York City's Police Commissioner (or his authorized delegates), has final responsibility for training, instructing, supervising and disciplining employees of the NYPD with respect to their arrest and treatment of individuals charged with crimes.

107.   During all times material to this complaint, New York City's Police Commissioner owed a duty to the public at large and to Plaintiff, which he knowingly and intentionally breached, or to which he was deliberately indifferent, to implement policies, procedures, customs and practices sufficient to deter conduct by his subordinates violating the aforementioned constitutional rights.

108.   At all relevant times New York City's Police Commissioner, personally or through his authorized delegates, had final authority to promulgate and implement policies and procedures, including policies and procedures on personal hiring, training and supervision, with respect to his Department's performance of its duties.

109.   At all relevant times New York City's Police Commissioner, personally or through his authorized delegates, had final authority and constituted a CITY policymaker for whom DEFENDANT CITY is liable with respect to the above-mentioned matters.

110.   As such, DEFENDANTS CITY and NYPD are directly liable and responsible for the acts of the DEFENDANT POLICE OFFICERS, as they repeatedly and knowingly failed to properly supervise, train, instruct, discipline them, and/or comply with the Constitution and laws of the United States.

111.   All of the foregoing acts by the DEFENDANTS CITY and NYPD deprived PLAINTIFF of his federally protected rights, including, but limited to, the constitutional rights enumerated herein.

112.   As a result of the above stated conduct, the actions of the DEFENDANTS CITY and NYPD caused PLAINTIFF to suffer loss of liberty, severe shock to his nervous systems, emotional distress, and other psychological emotional injuries.

## SEVENTH CAUSE OF ACTION
## (PENDENT STATE CLAIM OF NEGLIGENT HIRING AND RETAINING AGAINST DEFENDANT CITY AND NYPD)

113.    The PLAINTIFF repeats each and every preceding paragraph as if fully pleaded and re-alleged in their entirety below.

114.    The DEFENDANT POLICE OFFICERS lacked the experience, deportment, and ability to be employed by DEFENDANTS CITY and NYPD.

115.    The DEFENDANTS CITY and NYPD failed to exercise due care and caution in its hiring practices, particularly when hiring the DEFENDANT POLICE OFFICERS, who lacked the mental capacity, maturity, sensibility, and intelligence, and ability to function as employees of the DEFENDANTS CITY and NYPD .

116.    DEFENDANTS CITY and NYPD , its agents, servants and/or employees were otherwise careless, negligent and reckless by hiring the DEFENDANT POLICE OFFICERS, as DEFENDANTS CITY and NYPD were, or should have been, aware of the lack of ability, experience, deportment, and maturity of the POLICE OFFICERS when they were hired.

117.    In the interest of exercising reasonable care, DEFENDANTS CITY and NYPD knew, or should have known, of the DEFENDANT POLICE OFFICERS' propensities to engage in wrongful conduct.

118.    DEFENDANTS CITY and NYPD  acted willfully, wantonly, maliciously, and with reckless disregard for the consequences of the DEFENDANT POLICE OFFICERS' actions by failing to exercise reasonable care in their hiring and retention practices.

119.    DEFENDANTS CITY and NYPD's improper hiring and retention of the

DEFENDANT POLICE OFFICERS resulted in false arrest, false imprisonment, and injuries to mind and body of PLAINTIFF that were solely due to the negligence of the CITY and the POLICE OFFICERS.

120.    As a result of the above stated conduct, the actions of the DEFENDANTS CITY and NYPD caused PLAINTIFF to suffer loss of liberty, severe shock to his nervous systems, emotional distress, and psychological emotional injuries.

**EIGHTH CAUSE OF ACTION**
**(PENDENT STATE CLAIM OF NEGLIGENT TRAINING AND SUPERVISING**
**AGAINST DEFENDANTS CITY and NYPD)**

121.    The PLAINTIFF repeats each and every preceding paragraph as if fully pleaded and re-alleged in their entirety below.

122.    The DEFENDANT POLICE OFFICERS lacked the experience, deportment, and ability to be employed by DEFENDANTS CITY and NYPD.

123.    DEFENDANTS CITY and NYPD failed to exercise due care and caution in its hiring practices, particularly when hiring the DEFENDANT POLICE OFFICERS, who lacked the mental capacity, maturity, sensibility, and intelligence, and ability to function as employees of DEFENDANTS CITY and NYPD .

124.    DEFENDANTS CITY and NYPD, their agents, servants and/or employees were otherwise careless, negligent and reckless by hiring the DEFENDANT POLICE OFFICERS, as DEFENDANTS CITY and NYPD were, or should have been, aware of the lack of ability, experience, deportment, and maturity of the POLICE OFFICERS when they were hired.

125.    In the interest of exercising reasonable care, DEFENDANTS CITY and NYPD knew, or should have known, of the DEFENDANT POLICE OFFICERS' propensities to engage in wrongful conduct.

126.    DEFENDANTS CITY and NYPD  acted willfully, wantonly, maliciously, and with reckless disregard for the consequences of the DEFENDANT POLICE OFFICERS' actions by failing to exercise reasonable care in their training and supervising practices.

127.    DEFENDANTS CITY and NYPD improper training and supervising of the DEFENDANT POLICE OFFICERS resulted in false arrest, false imprisonment, and injuries to the mind and body of the PLAINTIFF that were solely due to the negligence of the CITY and the POLICE OFFICERS.

128.    As a result of the above stated conduct, the actions of the DEFENDANTS CITY and NYPD caused PLAINTIFF to suffer loss of liberty, severe shock to his nervous systems, emotional distress, and psychological emotional injuries.

## NINTH CAUSE OF ACTION
### (PENDENT STATE CLAIM OF ABUSE OF PROCESS AGAINST ALL DEFENDANTS

129.    The PLAINTIFF repeats each and every preceding paragraph as if fully pleaded and re-alleged in their entirety below.

130.    New York State law protects all individuals from unreasonable searches and seizures, as well as wrongful and false charges.

131.    Despite lacking probable cause to seize the PLAINTIFF, the DEFENDANT POLICE OFFICERS nonetheless did so.

**132.**    The above described actions of the DEFENDANTS, more specifically the DEFENDANT POLICE OFFICERS, constitute abuse of process due to their intentional, willful, and malicious fabrication of a probable cause used to justify the unreasonable seizure of the PLAINTIFF.

**133.**    At all relevant times, the DEFENDANT POLICE OFFICERS were employed by DEFENDANTS CITY and NYPD.

**134.**    The DEFENDANT POLICE OFFICERS were acting within the purpose and scope of such employment, rendering DEFENDANTS CITY and NYPD liable for the wrongful conduct of their officers, agents, servants, and/or employees.

**135.**    The aforementioned actions of the DEFENDANT POLICE OFFICERS were committed under color of state law and deprived the PLAINTIFF of rights, privileges, or immunities guaranteed by the Constitution.

**136.**    PLAINTIFF was injured, rendered sick, sore, lame, and disabled, and was, or will be cause, to undergo medical treatment and advice, and has been unable to pursue his usual and regular activities due to the permanent nature of his injuries.

**137.**    As a result of the above stated conduct, the actions of the DEFENDANT POLICE OFFICERS caused PLAINTIFF to suffer loss of liberty, severe shock to his nervous systems, emotional distress, and psychological emotional injuries.

<u>**TENTH CAUSE OF ACTION**</u>
<u>**(PENDENT STATE CLAIM OF FAILURE TO INTERVENE AGAINST DEFENDANT**</u>
<u>**POLICE OFFICERS)**</u>

**138.** The PLAINTIFF repeats each and every preceding paragraph as if fully pleaded and re-alleged in their entirety below.

**139.** The DEFENDANT POLICE OFFICERS, individually, had an affirmative duty to intervene on behalf of the PLAINTIFF when witnessing his Constitutional rights being violated in their presence by other POLICE OFFICERS.

**140.** Yet, the DEFENDANT POLICE OFFICERS failed to intervene.

**141.** At all relevant times, the DEFENDANT POLICE OFFICERS were employed by DEFENDANTS CITY and NYPD.

**142.** The DEFENDANT POLICE OFFICERS were acting within the purpose and scope of such employment, rendering the CITY and NYPD liable for the wrongful conduct of their officers, agents, servants, and/or employees.

**143.** As a result of the DEFENDANT POLICE OFFICERS' actions, the PLAINTIFF was unwarrantedly subjected to false arrest, false imprisonment, and other Constitutional violations which resulted in injuries.

**144.** PLAINTIFF was injured, rendered sick, sore, lame, and disabled, and was, or will be cause, to undergo medical treatment and advice, and has been unable to pursue his usual and regular activities due to the permanent nature of his injuries.

**145.** As a result of the above stated conduct, the actions of the DEFENDANT POLICE OFFICERS caused PLAINTIFF to suffer loss of liberty, severe shock to his nervous systems, emotional distress, and psychological emotional injuries.

## JURY DEMAND

**146.**   Plaintiff hereby demands trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

      a.     For compensatory damages in an amount to be determined;

      b.     For punitive damages in an amount to be determined;

      c.     For reasonable attorneys' fees, together with costs and disbursements, pursuant to § 1988 and this Court's discretion;

      d.     For pre-judgment interest as allowed by law; and

      e.     For such other and further relief as this Court may deem just and proper.

**Dated: April 19, 2024**
      **New York, NY**

              **/S/**
              _____

              **Rehan Nazrali, Esq.**
              **Attorney for Plaintiff**
              **299 Broadway — 17th Floor**
              **NY, NY 10007**
              **646-331-9378**

**To:**   **CITY OF NEW YORK**
       **c/o Corporation Counsel**
       **100 Church Street**
       **NY, NY — 10007**

       **The New York City Police Department**
       **One Police Plaza, Legal Bureau**
       **New York, NY 10038**